| | |
|---|---|
| Michael F. Kuppich, | Civ. No. 16-2545 (BRT) |
| Plaintiff, | |
| v. | |
| Nancy A. Berryhill,<br>Acting Commissioner of<br>Social Security, | **MEMORANDUM<br>OPINION AND ORDER** |
| Defendant. | |

Edward C. Olson, Esq., Disability Attorneys of Minnesota, counsel for Plaintiff.

Gregory G. Brooker, Esq., United States Attorney's Office, counsel for Defendant.

BECKY THORSON, United States Magistrate Judge.

An Administrative Law Judge ("ALJ") found that Plaintiff Michael F. Kuppich was disabled starting on January 26, 2010, but was not disabled prior to that date. Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of Defendant Commissioner of Social Security denying his application for disability insurance benefits during the period from January 13, 2005, to January 26, 2010. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 15, 17.) For the reasons stated below, the ALJ's decision is supported by substantial evidence in the record. Therefore,

Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

## BACKGROUND

**I. Procedural History**

Plaintiff applied for Title II disability insurance benefits ("DIB") on August 10, 2006, alleging a disability onset date of October 22, 2004. (Tr. 9, 98.)[1] Plaintiff's application was denied initially and on reconsideration, and a hearing was held before an Administrative Law Judge ("ALJ") on November 20, 2008. (Tr. 20–35.)[2] The ALJ issued an unfavorable decision on March 9, 2009. (Tr. 9–17.) On appeal, the district court reversed the Commissioner's denial of benefits and remanded for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). (Tr. 542–45.) Pursuant to the remand, the Social Security Administration Appeals Council directed the ALJ to further evaluate Plaintiff's depression and whether his past work as a self-employed rehabilitation clerk constitutes substantial gainful activity. (Tr. 553–54.)

The ALJ conducted a second hearing on December 19, 2011. (Tr. 504–23.) On February 15, 2012, in a partially favorable decision, the ALJ found that Plaintiff was disabled since January 27, 2010, but was not disabled prior to that date. (Tr. 559–71.) Plaintiff appealed on March 18, 2012. (Tr. 678.) More than four years later, on May 31,

---

[1] Throughout this Order and Opinion, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 11.)

[2] At this hearing, Plaintiff amended his disability onset date to January 13, 2005. (Tr. 9, 21–22.)

2

2016, the Appeals Council denied Plaintiff's request for review. (Tr. 497–500.) This denial made the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On July 27, 2016, Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.) Defendant filed an answer on November 8, 2016. (Doc. No. 9.) The parties have filed cross-motions for summary judgment. (Doc. No. 16, Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem."); Doc. No. 18, Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.").) Plaintiff argues that the ALJ did not offer sufficient reasons for rejecting the opinion of a consulting psychiatrist, Dr. Alford Karayusuf, M.D., that Plaintiff is limited to unskilled work. (Pl.'s Mem. 10–14.) Defendant argues that the ALJ gave an adequate explanation for discounting Dr. Karayusuf's opinion, and that the ALJ's denial of benefits is supported by substantial evidence in the record as a whole. (Def.'s Mem. 6–16.)

## II.    Personal and Work Background

Born in 1950, Plaintiff is the second youngest of ten siblings (five brothers and five sisters). (Tr. 103, 738.) Plaintiff was married, but he divorced in 1990 and has no children. (Tr. 470.) He has a college degree in physical education. (Tr. 23.) He lives with one of his brothers. (Tr. 29.)

Since about 1990, Plaintiff has worked as a rehabilitation clerk, helping injured workers find suitable work. (Tr. 17, 27–28.) Plaintiff used to perform this job on a full-time basis. (Tr. 27–28.) At his first disability hearing, Plaintiff testified that he could only

work twenty hours per week. (Tr. 28.) At the second hearing, Plaintiff testified that he was down to working only ten hours a week and he works from home. (Tr. 27, 508.)

## III. The ALJ's Findings and Decision

On February 15, 2012, following Plaintiff's second disability hearing, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled beginning January 27, 2010, but not disabled prior to that date. (Tr. 559–71.) The ALJ followed the five-step evaluation process dictated by 20 C.F.R. § 404.1520(a)(4), which involves the following determinations: (1) whether Plaintiff is involved in "substantial gainful activity"; (2) whether Plaintiff has a severe impairment that significantly limits his mental or physical ability to work; (3) whether Plaintiff's impairments meet or equal a presumptively disabling impairment listed in the regulations; (4) whether Plaintiff has the residual functional capacity ("RFC") to perform his past work; and (5) if Plaintiff cannot perform his past work, whether the government has shown that Plaintiff can perform other work, and that there is a sufficient number of those jobs available in the national economy. (Tr. 560–61.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 561.) The ALJ recognized that Plaintiff worked after his alleged onset date, but found that his earnings were below the level required to be considered substantial gainful activity in those years. (*Id.*)

The ALJ determined at step two that Plaintiff has the following severe impairments: diabetes mellitus with peripheral neuropathy; degenerative disc disease;

4

right eye infection with decreased vision in the right eye; major depressive disorder; and an anxiety disorder. (Tr. 561–63.)[3]

At step three, the ALJ concluded that Plaintiff's impairments do not meet or equal the severity of any of the listed impairments. (Tr. 563–64.) Discussing Plaintiff's mental impairments under Listings 12.04 and 12.06, the ALJ found that Plaintiff has only mild restriction in activities of daily living. (Tr. 564.) According to Dr. Karayusuf's report, Plaintiff was living with his brother and relying on his brother to do most of the cooking and household chores. (*Id.*) Plaintiff also stated, however, that he was able to make his own breakfast and snacks, that he drove to the post office every day, and that he was able to pay bills and handle bank accounts, with occasional reminders. (*Id.*) Plaintiff continued to work part-time, and while it took him longer to finish work tasks, the ALJ attributed this to fatigue and pain rather than psychological symptoms. (*Id.*) The ALJ further concluded that Plaintiff was only mildly limited in his ability to maintain social functioning; that he experiences moderate difficulties in maintaining concentration, persistence, or pace, partly due to his mental impairments and partly as a result of pain;[4] and that he has experienced no episodes of decompensation. (*Id.*)

The ALJ then determined that Plaintiff has the RFC to perform light work, except no work involving heights, ladders, scaffolding, foot pedal manipulation, or hazardous

---

[3] The ALJ found that Plaintiff's knee pain and a right shoulder impingement were not severe impairments. (Tr. 562.)

[4] To accommodate Plaintiff's difficulties in maintaining concentration, persistence, or pace, the ALJ indicated that he limited Plaintiff as set forth in the RFC. (Tr. 564.)

5

equipment or machinery; work with only occasional bending, stooping, crouching, crawling, twisting, or climbing; no work with a requirement for constant fine visual acuity, such as work with a microscope or work where fine details would have to be examined; and with a limitation to unskilled or semi-skilled work with no fast pace or high production goals, such as no timed piece work or fast paced assembly line work. (*Id.*) The ALJ considered and rejected Plaintiff's assertion that he is physically and mentally incapable of working full-time because the medical evidence does not entirely corroborate Plaintiff's testimony regarding his functional limitations. (Tr. 565.) The ALJ explained that Plaintiff's mental health treatment, for example, had been "on and off" for about ten years, and the ALJ determined that the scope of Plaintiff's treatment was inconsistent with his allegations of disabling limitations. (Tr. 566.) The ALJ observed that while Plaintiff reported "quite severe anxiety and panic attacks" in 2009, and was described as having a poor response to anti-depressants in general, Plaintiff had recently started taking Diazepam, which resulted in a "big improvement in his symptoms of anxiety and depression." (*Id.*)

Turning to the opinion evidence, the ALJ gave great weight to the opinion of Plaintiff's treating neurologist, Dr. Soren A. Ryberg, M.D., who limited Plaintiff to working thirty hours a week in July 2005, but instructed him to gradually return to work. (Tr. 567.) The ALJ also gave some weight to the opinion of the State Agency Medical Consultant regarding Plaintiff's functional limitations. (*Id.*) The ALJ found that the opinion of Plaintiff's orthopedist, Dr. Douglas A. Becker, M.D., who limited Plaintiff to twenty hours of work each week from December 2004 to May 2005, was not entitled to

6

significant or controlling weight because his treatment was limited to a seven month period of time, and because it was related to Plaintiff's shoulder, which improved after surgery. (*Id.*) In addition, the ALJ considered and largely rejected the opinions of Plaintiff's treating chiropractor, Dr. Kenneth Odegaard, D.C.; licensed psychologist Gary E. Donaldson, M.S. Ed.; consulting psychiatrist Dr. Karayusuf; and licensed psychologist John Robertson-Smith, M.A. (Tr. 567–68.) The ALJ found, for example, that Dr. Karayusuf's opinion is "not consistent" with Dr. Karayusuf's assessment that Plaintiff's depression was "largely in remission." (Tr. 567.)[5]

At step four, the ALJ ultimately determined that Plaintiff could not perform any past relevant work considering Plaintiff's RFC. (Tr. 568.) Plaintiff's past work as a rehabilitation clerk, from 2006 to the present, was not considered past relevant work because it was not performed at the level of substantial gainful activity. (*Id.*) Plaintiff's prior work as a job placement specialist[6] did result in earnings above the SGA level for certain years, but the ALJ determined that "the demands of that work exceed the limitations in the current residual functional capacity." (*Id.*)

---

[5] Dr. Karayusuf restricted Plaintiff to work involving the ability to "understand, retain and follow simple instructions" along with "brief, superficial interactions with fellow workers, supervisors and the public." (Tr. 418.)

[6] This appears to be the same type of job as Plaintiff's rehabilitation clerk position, except it was full-time and more demanding physically. Plaintiff testified in 2008 that he does what he's "been doing for 18 years. But the last four years I strictly do it at home . . . . And I used to do that full-time. But I used to drive people to interviews and meet with clients. And I used to do a lot of interaction with these clients. But I can't really do that anymore because of all my problems." (Tr. 27–28.)

7

Finally, at step five, the ALJ determined that during the period beginning with January 13, 2005 (the alleged onset date) through January 26, 2010, Plaintiff was able to transfer acquired skills from his past relevant work as a job placement specialist to other occupations with jobs existing in significant numbers in the national economy. (Tr. 568–69.) However, since January 27, 2010, the ALJ found that Plaintiff's acquired job skills did not transfer to other occupations within Plaintiff's RFC. (Tr. 570.) In making this finding, the ALJ relied on testimony from a vocational expert, who considered Plaintiff's age (which made him an individual closely approaching retirement age), previous work with job placement, customer service, and record keeping, and the move to a clerical field. (*Id.*) In light of these factors, the ALJ found that more than a minimal vocational adjustment would be required, and therefore Plaintiff's skills were not transferable from January 27, 2010, moving forward. (*Id.*)[7]

## DISCUSSION

### I. Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any

---

[7] Plaintiff turned sixty on April 27, 2010, and thus qualified as an individual closely approaching retirement age on that date, but the ALJ applied the age categories "non-mechanically" to find that Plaintiff was disabled beginning a few months earlier. (Tr. 570.) For a claimant closely approaching retirement age (age 60 or older) who is limited to light work, skills are "transferable to skilled or semiskilled light work only if the light work is so similar to . . . previous work" that the claimant "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). On review, the Court must determine whether the ALJ's decision to deny benefits is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole. *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010); *see also Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). "Substantial evidence is less

than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The Court thus considers evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner*, 607 F.3d at 536. The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

## II.     Analysis of the ALJ's Decision

Plaintiff argues that the ALJ's RFC formulation is not supported by substantial evidence in the record as a whole. (Pl.'s Mem. 10–14.) In support, Plaintiff points to consulting examiner Dr. Karayusuf's conclusion that Plaintiff is restricted to simple, unskilled work activities and only brief, superficial contact with others. (*Id.* at 11.) According to Plaintiff, the ALJ did not adequately state his rationale for rejecting this aspect of Dr. Karayusuf's opinion, which is further supported by other opinion evidence. (*Id.* at 12–13.) In response, the Commissioner argues that the ALJ correctly evaluated Dr.

Karayusuf's opinion, properly assessed Plaintiff's RFC, and rendered a decision that is supported by substantial evidence in the record. (Def.'s Mem. 6–14.)

### A. The ALJ Did Not Commit Error in Addressing Dr. Karayusuf's Consulting Opinion

Dr. Karayusuf examined Plaintiff on November 3, 2006. (Tr. 416.) He diagnosed Plaintiff with depression, largely in remission, and "[m]ost significantly, the claimant has from the psychiatric standpoint a somatization disorder consequent to his considerable preoccupation with his physical health and physical symptoms." (Tr. 418.) He concluded that Plaintiff can

> understand, retain and follow simple instructions. He is restricted to brief, superficial interactions with fellow workers, supervisors and the public. The fewer communications he has with fellow workers, supervisors and the public the better, as his conversations are almost always likely to end up involving talking about his physical health, which most people are unlikely going to want to hear. Within these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, he is able to maintain pace and persistence.

(*Id.*)

Dr. Karayusuf is a consulting examiner, not a treating source, which means that his opinion deserves "no special weight." *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). The ALJ did not give "any significant weight" to Dr. Karayusuf's opinion because it was "not consistent with his assessment that the claimant's depression was largely in remission." (Tr. 567.) A contradictory or inconsistent opinion can be discounted on that basis. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996).

The ALJ's opinion discounting Dr. Karayusuf's limitation is also supported because Dr. Karayusuf did not connect his proposed limitation to Plaintiff's mental

11

impairment. Instead, Dr. Karayusuf connected Plaintiff's limitations to his "considerable preoccupation with his physical health and symptoms," which would be off-putting to coworkers. (Tr. 418.) An ALJ is entitled to discount an opinion from a mental health provider that does not link the proposed limitations to a mental impairment. *See Garza v. Barnhart*, 397 F.3d 1087, 1088 (8th Cir. 2005). A claimant's residual functional capacity is "the most a *claimant* can still do despite his or her physical limitations," *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (emphasis added), not a measure of the impact claimant's behavior would have on hypothetical coworkers.

Finally, the results of Plaintiff's mental status examination with Dr. Karayusuf were essentially unremarkable. (Tr. 417–18.) Plaintiff was oriented to time, place and person; recalled three of the last five Presidents of the United States accurately and in correct order; was not able to subtract serial sevens,[8] but did subtract fifteen minus six correctly; and recalled two out of three unrelated objects after five minutes. (Tr. 417.) Thus, Dr. Karayusuf found that Plaintiff's recent and remote memory were intact, and that his intelligence was "dull normal." (*Id.*) Moreover, Plaintiff was not tearful, his mood was neutral, his affect was appropriate, and he had no loosening of associations. (Tr. 418.) Thus, it appears that Dr. Karayusuf's opinion was based on Plaintiff's subjective complaints, rather than objective clinical findings. *See Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (opinion entitled to non-controlling weight because the

---

[8] Serial sevens, counting down from one hundred by sevens, is a clinical test used to test mental function. *See Snetselaar v. Astrue*, 588 F. Supp. 2d 1030, 1050 (W.D. Mo. 2008).

doctor "cited only limitations based on the claimant's subjective complaints, not his own objective findings"); *see also Kirby*, 500 F.3d at 709.

For these reasons, the ALJ did not commit error in addressing Dr. Karayusuf's opinion, and the assignment of weight thereto is supported by substantial evidence in the record as a whole.

**B.     The ALJ's RFC and Denial of Benefits is Supported by Substantial Evidence**

Even if the ALJ did not adequately state her rationale for rejecting Dr. Karayusuf's opinion, this error was harmless because the ALJ's RFC finding and resulting denial of benefits is supported by substantial evidence. *See Osborne v. Colvin*, 95 F. Supp. 3d 1147, 1166 (D. Neb. 2015) ("For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred.") (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003)).

The ALJ explained that Plaintiff's overall mental health treatment was inconsistent with his allegations of disabling limitation. (Tr. 566.) In January 2005, for example, Plaintiff described his depression as intermittent. (Tr. 340.) Then in May 2005, Plaintiff was doing better mentally with Celexa. (Tr. 342.) As noted above, Dr. Karayusuf's mental exam findings in November 2006 were essentially unremarkable; Plaintiff's recent and remote memory was intact, he was oriented to time, place, and person, and his intelligence was "dull normal." (Tr. 417.) Later, Plaintiff reported that he began responding poorly to antidepressants, but he reported "big improvement" in his anxiety and depression with Diazepam. (Tr. 736–38.) In July of 2009, Dr. Pak noted that Plaintiff

had "been depressed," but was "more hopeful because of the schedule for his back surgery, which will happen in the next . . . month or so," and Diazepam was "alleviating his emotional condition quite well." (Tr. 739.) These findings, along with Plaintiff's continued work as a rehabilitation clerk[9] (albeit on a part-time basis), provide substantial evidence in support of the ALJ's RFC finding.

## ORDER

Based on the foregoing, and all the files, records, and submissions herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. 17) is **GRANTED**; and

2. Plaintiff's Motion for Summary Judgment (Doc. No. 15) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 14, 2017            *s/ Becky R. Thorson*_____
                                    BECKY R. THORSON
                                    United States Magistrate Judge

---

[9] The vocational expert classified this job as semiskilled. (Tr. 516.)